1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                        SOUTHERN DISTRICT OF CALIFORNIA

10

11   M SEVEN SYSTEMS LIMITED,          )  Civil No. 12cv01424 CAB(RBB)
                                       )
12                   Plaintiff,        )  **ORDER DENYING MOTION [FOR**
                                       )  **ORDER TO SHOW CAUSE HEARING]**
13   v.                                )  **TO HOLD DEFENDANTS CHRIS YOUNG**
                                       )  **CHOI, YONGSIK "STANLEY" PARK,**
14   LEAP WIRELESS INTERNATIONAL,      )  **AND ACTSCOM USA, INC. IN**
     INC. et al,                       )  **CONTEMPT FOR FAILURE TO COMPLY**
15                                     )  **WITH JUDGE MAJOR'S MARCH 17,**
                     Defendants.       )  **2014 ORDER [ECF NO. 110];**
16                                     )
                                       )  **ORDER GRANTING JOINT MOTION TO**
17                                     )  **SEAL EXHIBITS 5-9 TO VAN LOON**
                                       )  **DECLARATION IN SUPPORT OF**
18                                     )  **MOTION TO HOLD DEFENDANTS**
                                       )  **CHRIS YOUNG CHOI, YONGSIK**
19                                     )  **"STANLEY" PARK, AND**
                                       )  **ACTSCOM USA, INC. IN CONTEMPT**
20                                     )  **FOR FAILURE TO COMPLY WITH**
                                       )  **JUDGE MAJOR'S MARCH 17, 2014**
21   _____)  **ORDER [ECF NO. 111]**

22

23        On May 11, 2014, Plaintiff M Seven System Limited ("M Seven")

24   filed a "Motion to Hold Defendants Chris Young Choi, Yongsik

25   'Stanley' Park, and Actscom USA, Inc. in Contempt for Failure to

26   Comply with Judge Major's March 17, 2014 Order [ECF No. 110]" (the

27   "Motion for Contempt") along with a Memorandum of Points and

28   Authorities, declarations from Erica Van Loon and Robert

                                        1

Stillerman, and several exhibits.[1]   Plaintiff M Seven asks that the Court find Defendants Chris Young Choi, Stanley Park, and Actscom USA, Inc. (collectively, the "Choi Defendants") in civil contempt for their failure to comply with United States Magistrate Judge Barbara L. Major's "Order Granting in Part Plaintiff's Motion to Compel Production of Documents from Defendants Actscom USA, Inc., Chris Young Choi, and Stanley Park [ECF No. 71]."   (Mot. Contempt Attach. #1 Mem. P. & A. 4, ECF No. 110.)[2]   On the same day, M Seven and Defendant Cricket Communications, Inc. ("Cricket") filed a joint motion to file documents under seal [ECF No. 111], along with several proposed sealed exhibits [ECF Nos. 112-116].

The Choi Defendants, on May 28, 2014, filed an "Opposition to M7's Motion to Hold Defendants in Contempt for Failure to Comply with Judge Major's March 17, 2014 Order [ECF No. 125]" (the "Opposition"), with declarations from Choi and Park, and several exhibits.   Defendant Cricket filed an "Opposition to M7's Motion for Contempt and Sanctions [ECF No. 127]" on the same day, with declarations and exhibits.   On June 4, 2014, Plaintiff filed a "Reply in Support of Plaintiff M Seven System Limited's Motion to Hold Defendants Chris Young Choi, Yongsik 'Stanley' Park, and

---

[1]   The Court construes Plaintiff's motion as a request that an order to show cause be issued as to why Defendants should not be held in contempt.   See Martinez v. City of Avondale, No. CV-12-1837-PHX-LOA, 2013 WL 5705291, at *1 (D. Ariz. Oct. 18, 2013) ("[T]he Court construes Defendants' Motion for Contempt as also requesting an order to show cause hearing why contempt sanctions should not be issued . . . .") (citations omitted); Hawecker v. Sorenson, No. 1:10-cv-00085-JLT, 2013 WL 3805146, at *3 (E.D. Cal. July 22, 2013) ("[T]he Court construes the Government's motion as a motion for an order to show cause, thereby initiating the civil contempt proceeding for Defendant's failure to comply with the terms of the Consent Decree.").

[2]   All documents will be cited using the page numbers assigned by the electronic case filing system.

Actscom USA, Inc. in Contempt for Failure to Comply with Judge Major's March 17, 2014 Order [ECF No. 131]" (the "Reply") and a "Reply to Defendant Cricket Communications, Inc.'s Opposition to Motion for Contempt and Sanctions [ECF No. 135]."

The Court requested supplemental briefing from M Seven and Choi [ECF No. 140]. Plaintiff filed its supplemental brief on June 12, 2014 [ECF No. 141], and Defendant filed his supplemental brief on June 19, 2014 [ECF No. 150]. The Motion for Contempt is suitable for resolution on the papers. See S.D. Cal. Civ. R. 7.1(d)(1). For the reasons explained below, the Motion for Contempt [ECF No. 110] is **DENIED,** and an order to show cause will not be issued.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The following factual and procedural background is taken from Judge Major's "Order Granting in Part Plaintiff's Motion to Compel Production of Documents From Defendants Actscom USA, Inc., Chris Young Choi, and Stanley Park":

> Plaintiff filed a complaint in the instant matter on June 12, 2012. ECF No. 1. In the complaint, Plaintiff alleges misappropriation of trade secrets, copyright infringement, violation of the Digital Millennium Copyright Act, violation of California Penal Code § 502, unfair competition, civil conspiracy to misappropriate trade secrets, and civil conspiracy to unfairly compete. Id. at 1. Specifically, Plaintiff, a R&D company providing wireless solutions to customers in "emerging and established telecommunications markets worldwide," developed the M7 source code for the CDM7126 mobile phone, which was launched in March 2008. Id. at 4. The phone contained Advanced Wireless Services ("AWS") which gave Plaintiff a "unique and competitive advantage in the AWS marketplace." Id. at 4-5. Plaintiff "is the owner, by work for hire and by way of assignment, of copyrights in the M7 Source Code." Id. at 5. Defendant Choi was a general manager at Plaintiff's with access to trade secrets concerning the CDM7126 phone. Id. Defendant Choi subsequently went to work as the Senior Director of

Device Development and Design for Defendant Cricket. Id. Plaintiff alleges that while working for Defendant Cricket, Defendant Choi was "responsible for the procurement and deployment of the CDM7126 phone being supplied by [Plaintiff] at that time." Id. at 6. In March 2008, Defendant Choi offered to purchase M7 source code and hardware design from Plaintiff. Id. Plaintiff refused and two months later other former employees of Plaintiff formed ACTScom Korea, of which Defendant Choi was the CEO. Id. In September 2008, Defendant Park left Plaintiff and went to work as the Chief of Software Engineering, Chief of Project Management, Chief of Marketing and Chief of Product Management of ACTScom Korea. Id. Defendant Cricket and Defendant ACTScom Korea "entered into a development and supply contract for AWS mobile phones" in October 2008. Id.

In January 2009, Defendant ACTScom USA was incorporated in San Diego with Defendant Choi as the primary investor and CEO and Defendant Park as the CFO. Id. at 7. One month later, Defendant Cricket commercially launched the A100 phone, which Plaintiff alleges contains "the stolen M7 Source Code and Hardware Design." Id. Plaintiff further alleges that Defendant "ACTScom [USA] would not have been able to offer AWS phones at the $61.99 price point, less than a year after its incorporation and with only a few months of research and development, if it had conducted its own original research and development." Id. Defendant Cricket replaced Plaintiff with ACTScom USA and began selling phones supplied by ACTScom USA. Id. Plaintiff alleges that Defendant ACTScom USA supplied Defendant Cricket with phones incorporating the stolen Source Code and Hardware Design, including models A100, A200, A300, A310, and A210. Id.

On July 30, 2012, Defendant Cricket Wireless filed a motion to dismiss [ECF No. 21] as did Defendants [ECF No. 22]. Both motions were granted in part and denied in part on June 26, 2013. ECF No. 33. All Defendants answered the complaint on August 1, 2013 [ECF Nos. 34 & 35] and participated in a telephonic Early Neutral Evaluation Conference on September 9, 2013 [ECF Nos. 38 & 39]. The parties participated in a telephonic Case Management Conference on October 7, 2013 [ECF Nos. 44 & 45] and the Court entered the parties' protective order on October 21, 2013 [ECF No. 49].

On February 3, 2014, counsel for all parties jointly contacted the Court regarding a discovery dispute brought by Plaintiff concerning Defendants and their objections to Plaintiff's discovery requests for various versions of source code. ECF No. 58.

4

(Order Granting Part Pl.'s Mot. Compel 1-3, ECF No. 71 (footnote omitted).)

M Seven filed a "Motion to Compel Production of Documents from Defendants Actscom USA, Inc., Chris Young Choi, and Stanley Park [ECF No. 59]" (the "Motion to Compel") before Judge Major on February 10, 2014.  There, Plaintiff moved to compel production of the source code for five different phones -- models A100, A200, A210, A300, and A310.  (Mot. Compel 6, ECF No. 59.)  On February 21, 2014, a "Motion by Defendants Actscom USA, Inc., Chris Choi, and Yongsik Park for Summary Judgment, and/or to Dismiss or Stay [ECF No. 63]" was filed.  The Choi Defendants filed an "Opposition to Plaintiff's Motion to Compel" [ECF No. 66], and M Seven filed its "Reply in Support of Plaintiff's Motion to Compel Production of Documents" [ECF No. 68].  In connection with their dispositive motions, the Choi Defendants filed an ex parte application to stay discovery [ECF No. 95], and on April 14, 2014, United States District Court Judge Cathy Ann Bencivengo granted their request [ECF No. 106].

On March 17, 2014, Judge Major granted in part and denied in part the Plaintiff's Motion to Compel [ECF No. 71].  She directed the Defendants to produce the source code for the A200, A210, A300, and A310 phones.  (Order Granting Part Pl.'s Mot. Compel 8, ECF No. 71.)  If Defendants were unable to obtain and produce the source code, each Defendant was directed to provide a declaration outlining what efforts were made to do so.  (Id.)  The case was subsequently transferred to the undersigned [ECF No. 84]. Defendants Choi, Park, and Actscom USA, Inc. filed declarations in accordance with Judge Major's order on April 11, 2014 [ECF Nos.

103, 104].  On May 11, 2014, Plaintiff filed the Motion for

Contempt [ECF No. 110].

   While this motion was pending, Judge Bencivengo granted

summary judgment on claim preclusion grounds in favor of Defendant

Choi on June 4, 2014, dismissing the claims against him [ECF No.

137].  She held that a final judgment had been entered against Choi

in an action in South Korea, precluding M Seven from seeking relief

in this Court.  (Order Granting Part Dispositive Mot. 8, 11, ECF

No. 137.)  She also noted that since the filing of the "Motion by

Defendants Actscom USA, Inc., Chris Choi, and Yongsik Park for

Summary Judgment, and/or to Dismiss or Stay," a final judgment had

been entered against Defendant Park in South Korea.  (Id. at 11.)

The request of Park and Actscom USA for a dismissal or stay was

deemed withdrawn in light of the entry of judgment against Park in

South Korea.  (Id.)  Park and Actscom USA, Inc. were allowed to

file additional dispositive motions by June 13, 2014.  (Id. (citing

Order Setting Br. Schedule 2, ECF No. 126).)

   M Seven objected to the Choi Defendants' declarations filed in

opposition to the Plaintiff's motion to hold them in contempt [ECF

Nos. 132, 133], and the Defendants objected to the evidence

supporting the Plaintiff's Reply [ECF No. 144].  Each side

responded to the objections [ECF Nos. 147, 148, 152].  On June 5,

2014, in light of the dismissal of the claims against Choi,

supplemental briefing was requested from Plaintiff and Choi

regarding whether this Court could find a dismissed party in

contempt.  (Mins., June 5, 2014, ECF No. 140.)  M Seven and Choi

filed their supplemental briefs on June 12 and 19, 2014,

respectively [ECF Nos. 141, 150].  Park and Actscom USA, Inc. filed

1    a Motion for Summary Judgment on June 13, 2014 [ECF No. 142].

2    Plaintiff has appealed the "Order Granting in Part the Dispositive

3    Motion of Defendants Chris Young Choi, Stanley Park, and Actscom

4    USA, Inc. [ECF No. 137]" to the Ninth Circuit Court of Appeals on

5    June 30, 2014 [ECF No. 162].[3]  On July 14, 2014, the Ninth Circuit

6    gave Plaintiff twenty-one days to voluntarily dismiss the appeal

7    because "[i]t appear[ed] that the district court's order challenged

8    in this appeal did not dispose of the action as to all claims and

9    all parties."  (Order 1, ECF No. 174.)   In the alternative,

10   Plaintiff was allowed to "show cause why [the appeal] should not be

11   dismissed for lack of jurisdiction."  (Id. (citation omitted).)

12                         **II.   LEGAL STANDARDS**

13       Generally, "proceedings for civil contempt are instituted by

14   the issuance of an Order to Show Cause . . . why a contempt

15   citation should not issue and a notice of a date for the hearing."

16   Hawecker v. Sorenson, 2013 WL 3805146, at *3 (citation omitted)

17   (internal quotation marks omitted).  In the Ninth Circuit, "a civil

18   contempt proceeding is 'a trial within the meaning of Fed.R.Civ.P.

19   43(a) rather than a hearing on a motion within the meaning of

20   Fdm.R.Civ.P. 43(e)[;] . . . the issues may not be tried on the

21   _____

22       [3]  M Seven's Notice of Appeal does not divest this Court of
     jurisdiction to rule on the Motion for Contempt.  See 20 James Wm.
     Moore et al., Moore's Federal Practice § 303.32[2][b][iii], at
23   303-79 (3rd ed. 2013) ("Most courts have held that a district court
     may award attorney's fees and impose sanctions after a timely
24   notice of appeal has been filed.") (citing Masalosalo v. Stonewall
     Ins. Co., 718 F.2d 955, 956-57 (9th Cir. 1983)) (other citations
25   omitted); see Kadant Johnson Inc. v. D'Amico, No. 3:12-mc-00126-SI,
     2012 WL 2019648, at *5 (D. Or. June 5, 2012) ("The filing of a
26   notice of appeal does not divest this court of authority to issue a
     contempt citation for failure to comply with a court order.")
27   (citing United States v. Phelps, 283 F.3d 1176, 1181 (9th Cir.
     2002); Stein v. Wood, 127 F.3d 1187, 1189 (9th Cir. 1997);
28   Masalosalo, 718 F.2d at 957; Am. Town Ctr. v. Hall 83 Assocs., 912
     F.2d 104, 110 (6th Cir. 1990)).

                                   7                    12cv01424 CAB(RBB)

basis of affidavits.'"  Pennwalt Corp. v. Durland-Wayland, Inc.,
708 F.2d 492, 495 (9th Cir. 1983) (quoting Hoffman Beer Drivers &
Salesman's Local Union No. 888, 536 F.2d 1268, 1277 (9th Cir.
1976)).  The responding party may present live testimony and cross-
examine witnesses and declarants.  See Rodriquez v. Cnty. of
Stanislaus, No. 1:08-CV-00856 OWW GSA, 2010 WL 3733843, at *5 (E.D.
Cal. Sept. 16, 2010).  If "affidavits offered in support of a
finding of contempt are uncontroverted, a full evidentiary hearing
is not essential to due process and the trial court may treat the
facts set forth in the uncontroverted affidavits as true."  Id.

    "'Civil contempt . . . consists of a party's disobedience to a
specific and definite court order by failure to take all reasonable
steps within the party's power to comply."  Reno Air Racing Ass'n
v. McCord, 452 F.3d 1126, 1130 (9th Cir. 2006) (quoting In re
Dual-Deck Cassette Recorder Antitrust Litig., 10 F.3d 693, 695 (9th
Cir. 1993)).  Rule 37(b) of the Federal Rules of Civil Procedure
authorizes district courts to impose a wide range of sanctions,
including contempt, on a party that fails to comply with a
discovery order.  Fed. R. Civ. P. 37(b)(2)(A).  "Contempt power
should not be used where there is uncertainty."  Sunbeam Corp. v.
Black & Decker (U.S.) Inc., 151 F.R.D. 11, 15 (D. R.I. 1993).

    "'Civil contempt is a refusal to do an act the court has
ordered for the benefit of a party; the sentence is remedial.
Criminal contempt is a completed act of disobedience; the sentence
is punitive to vindicate the authority of the court."  Bingman v.
Ward, 100 F.3d 653, 655 (9th Cir. 1996) (quoting In re Sequoia Auto
Brokers Ltd., 827 F.2d 1281, 1283 n. 1 (9th Cir. 1987)).  In the
Ninth Circuit, a contempt order is for civil contempt if the

sanction coerces compliance with a court order or compensates the injured party for losses sustained.  Koninklijke Philips Elecs., N .V. v. KXD Tech., Inc., 539 F.3d 1039, 1044 (9th Cir. 2008).

"The party alleging civil contempt must demonstrate that the alleged contemnor violated the court's order by 'clear and convincing evidence,' not merely a preponderance of the evidence." In re Dual-Deck Cassette Recorder Antitrust Litig., 10 F.3d at 695 (citing Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc., 689 F.2d 885, 889 (9th Cir. 1982)).  Therefore, a court may impose a civil contempt sanction only if there is clear and convincing evidence that "(1) the contemnor violated a court order, (2) the noncompliance was more than technical or de minimis (substantial compliance is not punishable as contempt), and (3) the contemnor's conduct was not the product of a good faith or reasonable interpretation of the violated order."  7 James Wm. Moore et al., Moore's Federal Practice § 37.51[7][b], at 37-109 (3rd ed. 2013) (footnotes omitted); see United States v. Bright, 596 F.3d 683, 694 (9th Cir. 2010) (quoting Labor/Cmty. Strategy Ctr. v. L.A. Cnty. Metro. Transp. Auth., 564 F.3d 1115, 1123 (9th Cir. 2009)).  "Any doubts as to whether these requirements have been met in a particular case must be resolved in favor of the party accused of the civil contempt."  7 James Wm. Moore et al., Moore's Federal Practice § 37.51[7][b], at 37-109 (footnote omitted).

## III.   DISCUSSION

### A.   The Joint Motion to File Documents Under Seal

With the Motion for Contempt, Plaintiff and Defendant Cricket filed a "Joint Motion to Seal Exhibits 5-9 to Van Loon Declaration in Support of Motion to Hold Defendants Chris Young Choi, Yongsik

1   'Stanley' Park, and Actscom USA, Inc. in Contempt for Failure to

2   Comply with Judge Major's March 17, 2014 Order [ECF No. 111]," (the

3   "Joint Motion to Seal Exhibits") and several proposed sealed

4   exhibits [ECF Nos. 112-116].  Cricket and M Seven request to file

5   under seal confidential "hardware and software release notes

6   involving the Cricket A100, A200, A210, A300, and A310 cell phone

7   models." (Joint Mot. Seal Exs. 2, ECF No. 111.)  The terms of the

8   protective order in this case allow either party to request to file

9   documents under seal.  (See Order Granting Mot. Stipulated

10  Protective Order 1-2, ECF No. 49.)  The Joint Motion to Seal

11  Exhibits [ECF No. 111] is **GRANTED**.

12  **B.    The Parties' Supplemental Filings**

13       Plaintiff filed a Reply in support of its motion and two

14  separate documents containing objections to the declarations of

15  Park and Choi that accompanied the Defendants' Opposition [ECF Nos.

16  131, 132, 133].  Defendants responded to the objections [ECF Nos.

17  147, 148].

18       Much of Plaintiff's Reply addresses statements made by Park

19  and Choi in their declarations.  (See Reply 8-12, ECF No. 131.)

20  M Seven references its evidentiary objections to Park's declaration

21  and argues that his declaration should be disregarded.  (Id. at 12

22  n.1.)

23       Park fails to set forth foundational facts and any basis
         for making statements regarding mobile phone development
24       or business practices of Actscom Korea, Appeal System or
         BNSoft, or showing that he has sufficient knowledge to
25       testify as to the technical source code analysis he
         undertook, and only presents impermissible hearsay from a
26       former Actscom Korea engineer.

27  (Id.)

28

10

1    Under the local rules, "No reply memorandum will exceed ten
2  (10) pages without leave of the judge."  S.D. Cal. Civ. R. 7.1(h).
3  M Seven's reply brief is ten pages in length, and Plaintiff did not
4  seek leave from the Court to file a brief in excess of ten pages.
5  (See Reply 4-13, ECF No. 131.)  Accordingly, the Clerk of Court is
6  ordered to **STRIKE** M Seven's "Evidentiary Objections to Chris Choi's
7  Declaration in Support of Opposition [ECF No. 132]" and
8  "Evidentiary Objections to Yongsik 'Stanley' Park's Declaration in
9  Support of Opposition [ECF No. 133]" from the docket.  The
10 corresponding "Response to M7's Evidentiary Objections to
11 Declaration of Yongsik 'Stanley' Park [ECF No. 147]" and "Response
12 to M7's Evidentiary Objections to Declarations of Chris Choi [ECF
13 No. 148]" are also **STRICKEN** from the docket.

14    Similarly, because Defendants did not seek leave to file a
15 surreply, the Clerk of Court is also ordered to **STRIKE** the Choi
16 Defendants' "Objections to Evidence Submitted with M7's Reply in
17 Support of Motion to Hold Defendants in Contempt for Failure to
18 Comply with Judge Major's March 17, 2014 Order [ECF No. 144]" and
19 the "Response to Objections to Evidence Submitted with M7's Reply
20 [ECF No. 152]."  (See Mins., May 14, 2014, ECF No. 119 (providing
21 deadlines for opposition and reply only).)

22 **C.   Judge Major's Order**

23    As noted, Judge Major granted in part and denied in part
24 Plaintiff's Motion to Compel.  (See Order Granting Part Pl.'s Mot.
25 Compel 9, ECF No. 71.)  She held that the Choi Defendants failed to
26 show that they made a reasonable effort to obtain the source code
27 for the Crickett model A200, A210, A300, and A310 cell phones.
28 (Id. at 6-8.)

Defendants' failure to make any effort to learn what
source code, if any, ACTScom Korea has in its possession
and/or to verify the amount and location of ACTScom
Korea's ESI, under cuts Defendants' argument that the
source code is not readily available.  Defendants must
make a reasonable effort to obtain the source code.

For the reasons set forth above, Plaintiff's motion
is **GRANTED IN PART** and Defendants must produce the source
code for phones A200, A210, A300, and A310.  If
Defendants are unable to obtain the source code for any
of the phones, each Defendant must provide a declaration
stating whether the code for each phone was ever in
Defendant's possession, custody, or control and, if it
was, what happened to the code.  Each defendant's
declaration also must identify what efforts were made to
locate the code and the results of those efforts.
Defendant Choi's declaration must include his efforts to
obtain the source code from ACTScom Korea, Appeal System,
and BNSoft.  Defendants Park and ACTScom USA must include
their efforts to obtain the source code from BNSoft.

(<u>Id.</u> at 8 (citations omitted).)  As to the A100 source code, the

Motion to Compel was denied because the Defendants had already

produced the code.  (<u>Id.</u> at 5, 8-9.)

D.    **The Defendants' Declarations**

On April 11, 2014, the Choi Defendants filed declarations in

response to Judge Major's order [ECF Nos. 103, 104].  There, they

explained that subsequent to the discovery ruling, Defendants gave

Plaintiff copies of the A210, A300, and A310 source code.  (Decl.

Choi 2-3, ECF No. 103; Decl. Park 2-3, ECF No. 104.)  They stated

that a former associate at Actscom Korea, Henry Jeong, was able to

procure the source code from a company computer.  (Decl. Choi 2-3,

ECF No. 103; Decl. Park 2, ECF No. 104.)  Jeong knew where to find

the relevant code because "when he and other engineers were laid

off by Actscom Korea early last year, they copied certain major

files (including source code related to prior projects) onto a

computer at Actscom Korea, and saved the files to a certain folder

12

1    within the computer." (Decl. Choi 3, ECF No. 103; Decl. Park 2,

2    ECF No. 104.)

3         Jeong was unable to find the A200 source code, however.

4    (Decl. Choi 3, ECF No. 103; Decl. Park 3, ECF No. 104.) Choi and

5    Park both stated, "I have never had a copy of the A200 source code

6    in my possession, custody or control, and Actscom USA also has

7    never had a copy of the A200 source code in its possession, custody

8    or control." (Decl. Choi 3, ECF No. 103; Decl. Park 3, ECF No.

9    104.) The Choi Defendants provided the following account of what

10   may have happened to the A200 source code:

11        [O]ne possible explanation is that the A200 was not kept
          because it was superseded by the A210. In particular, I
12        am informed and believe that the source code for the A210
          device is virtually the same as the source code for the
13        A200 device. The A210 was largely a cosmetic update to
          the A200. The two phones have the same hardware, the same
14        general source code, and the same dimensions. The only
          major differences between the phones are that the housing
15        was slightly updated, and the color was updated. In
          addition, any bugs in the software were likely fixed.

16

17   (Decl. Choi 3-4, ECF No. 103; Decl. Park 3, ECF No. 104.)

18        In addition to attempting to obtain the code from Actscom

19   Korea and Jeong, Defendants also contacted the subcontractors

20   responsible for creating the code, Appeal System and BNSoft.

21   (Decl. Choi 4, ECF No. 103; Decl. Park 3, ECF No. 104.) These

22   attempts were unsuccessful. (Decl. Choi 4-5, ECF No. 103; Decl.

23   Park 4-5, ECF No. 104.) Defendants e-mailed the chief executive

24   officer of Appeal System and sent letters to the company and its

25   attorney. (Decl. Choi 4, ECF No. 103; Decl. Park 4, ECF No. 104.)

26   The e-mail was returned as nondeliverable, and no response was

27   received to either letter. (Decl. Choi 4, ECF No. 103; Decl. Park

28   4, ECF No. 104.) Defendants explained that they did not anticipate

                                    13

1  a response from Appeal System because Actscom Korea was suing the

2  company.  (Decl. Choi 4, ECF No. 103; Decl. Park 4, ECF No. 104.)

3  Further, Choi and Park have been informed that Appeal System was

4  "no longer a viable, operating business."  (Decl. Choi 4, ECF No.

5  103; Decl. Park 4, ECF No. 104.)

6        As to BNSoft, Defendants sent a letter to the company and e-

7  mailed its vice president.  (Decl. Choi 5, ECF No. 103; Decl. Park

8  4, ECF No. 104.)  A BNSoft employee responded to the e-mail saying

9  that "he looked for the A300 and A310 code, but could not find it."

10 (Decl. Choi 5, ECF No. 103 (attaching e-mail response); Decl. Park

11 4, ECF No. 104 (attaching e-mail response).)  Each Defendant

12 concluded, "Because these projects are at least four years old, it

13 is not surprising to me that BNSoft could not find any copies of

14 the source code."  (Decl. Choi 5, ECF No. 103; Decl. Park 4-5, ECF

15 No. 104.)

16 **E.    The A100 Source Code**

17        As noted, Judge Major denied the Motion to Compel production

18 of the A100 source code because the Choi Defendants had already

19 produced it.  (See Order Granting Part Pl.'s Mot. Compel 8, ECF No.

20 71.)  M Seven now contends that its expert, Robert Stillerman,

21 compared the source code provided by Defendants with the source

22 code found in a commercially released A100 phone.  (Mot. Contempt

23 Attach. #1 Mem. P. & A. 9 n.1, ECF No. 110 (citing id. Attach. #4

24 Decl. Stillerman at 6).)  Stillerman determined that the code

25 provided is different from, and an earlier version of, the code

26 found in the phone he examined.  (Id.)  Plaintiff asks the Court to

27 compel Defendants to produce the source code for the commercially

28 released A100 phone.  (Id.)

14

1    In the Opposition, the Choi Defendants argue that the A100
2  source code "was <u>not</u> the subject of Judge Major's order." (Opp'n
3  6, ECF No. 125.)  They admit that the version of source code
4  provided may differ from the source code found in the commercially
5  released phone that Stillerman examined. (<u>Id.</u> at 14.)  Defendants,
6  however, maintain that any difference is immaterial because both
7  versions are "maintenance releases" and thus are among several
8  final versions of the code. (<u>Id.</u>)[4]

9    In the Reply, M Seven insists that the evidence suggests that
10 Defendants had possession of multiple final versions of the source
11 code. (Reply 8, ECF No. 131 (citing Opp'n 14, ECF No. 125; <u>id.</u>
12 Attach. #5 Decl. Park at 5-6).)  Plaintiff urges that Defendants
13 must provide each version of the source code or an explanatory
14 declaration for each. (<u>Id.</u> at 10.)

15    In effect, Plaintiff seeks reconsideration of Judge Major's
16 order based on the recent opinion of its expert. (<u>See</u> Mot.
17 Contempt Attach. #1 Mem. P. & A. 9 n.1, ECF No. 110.)  Although
18 M Seven did not file a motion for reconsideration of the ruling, it
19 argues that "the Choi Defendants should be compelled to produce a
20 complete, undoctored version of A100 source code as well, including
21 the commercially released version." (<u>Id.</u>)  But except as permitted
22 under Rules 59 and 60 of the Federal Rules of Civil Procedure,
23 motions for reconsideration must be brought "within twenty-eight
24 (28) days after the entry of the ruling, order or judgment sought
25 to be reconsidered." S.D. Cal. Civ. R. 7.1(i)(2).  M Seven's

26 _____

27    [4] "A maintenance release is a version of code released after
   the phone is initially manufactured, for use in subsequent
28 production runs (for example, the updated code may fix certain
   bugs)." (<u>Id.</u> at 13.)

Motion for Contempt was filed on May 11, 2014; even this motion was brought more than twenty-eight days after Judge Major's March 17, 2014 Order.  Plaintiff does not argue that the deadline for filing its request for reconsideration should be extended.  (See generally Mot. Contempt Attach. #1 Mem. P. & A. 9 n.1, ECF No. 110.)  On this basis, Plaintiff's request for the source code for the commercially released A100 phone or, alternatively, for reconsideration of Judge Major's order as to the A100 source code is **DENIED**.

**F.   The A210, A300, and A310 Source Code**

     Next, M Seven contends that the A210, A300, and A310 source code that was produced is deficient for several reasons.  (Mot. Contempt Attach. #1 Mem. P. & A. 8, 14-15, ECF No. 110.)  First, like the A100 source code, Plaintiff insists that the code provided is different from the code found in the A210, A300, and A310 cell phones that Stillerman examined.  (Id. at 8, 14 (citing id. Attach. #4 Decl. Stillerman at 6-7).)  Stillerman determined that the source code produced was only "a single pre-release version of the code," and "insufficient to confirm that the full functionality of the commercially-released versions of the code."  (Id. at 8-9 (citing id. Attach. #4 Decl. Stillerman at 4, 7).)

     M Seven also alleges that Defendants' production is deficient because they only produced one version of the source code; yet, numerous versions of the code existed for each model of phone.  (See Mot. Contempt Attach. #1 Mem. P. & A. 9, 14-15, ECF No. 110.)  It maintains that "[t]he Court's Order specifically applies to all the 'various versions of the source code.'"  (Id. at 13 (quoting Order Granting Part Pl.'s Mot. Compel 3, ECF No. 71).)  For each version of code contained in the cell phone models, Plaintiff urges

that Defendants must provide either the source code or an explanatory declaration.  (<u>Id.</u> at 14-15.)  Further, M Seven argues that "[g]iven that the source code was a key part of the Choi Defendants' business, it is implausible that the final version of the source code was never in their possession."  (<u>Id.</u> at 15-16.) Plaintiff speculates that Defendants may have destroyed the source code.  (<u>Id.</u> at 16.)

M Seven claims that these deficiencies are clear and convincing evidence that the Choi Defendants violated Judge Major's discovery order.  (<u>Id.</u> at 13.)  Plaintiff additionally asserts that Defendants have not substantially complied with the ruling.  (<u>Id.</u> at 17-18.)  Finally, M Seven contends that Defendants' conduct was not based "on a good faith interpretation of this Court's ruling" because Judge Major's order is "simple, explicit, and unambiguous." (<u>Id.</u> at 18.)

In the Opposition, the Choi Defendants maintain that they have reasonably interpreted and fully complied with the order.  (Opp'n 8, ECF No. 125.)  They argue that they were not required to produce all versions of the source code, just a final version for each phone model.  (<u>Id.</u>)  "[T]he order does not specifically state that Defendants were required to produce every historical version of source code, even including old, superseded versions not actually used in the phones."  (<u>Id.</u>)  Judge Major's holding is vague, they insist, and simply orders that "'the source code'" be produced. (<u>Id.</u> (citing Order Granting Part Pl.'s Mot. Compel 8, ECF No. 71).) Plaintiff submits that the order required production of "'various versions of source code,'" but Defendants counter that the portion of the order upon which M Seven relies is from the factual

17

background, not the holding. (Id. at 8-9 (citing Mot. Contempt Attach. #1 Mem. P. & A. 1, 10, ECF No. 110; Order Granting Part Pl.'s Mot. Compel 3, ECF No. 71).)

The Choi Defendants assert that they have complied with Judge Major's order because they produced every version of the source code that they possessed. (Id. at 9-10 (citing id. Attach. #1 Decl. Choi at 4; id. Attach. #5 Decl. Park at 4).) Because they provided source code for the A210, A300, and A310 models, Defendants argue that they were not required to provide declarations for those phones. (Id.) They insist that Plaintiff's claim that Defendants destroyed source code is "categorically false" and "pure speculation." (Id. at 11.) "Such speculation is insufficient to satisfy M7's burden to show contempt." (Id. (citing NLRB v. S.F. Typographical Union No. 21, 465 F.2d 53, 58 (9th Cir. 1972); FTC v. Lights of Am. Inc., SACV 10-1333 JVS, 2012 WL 695008, at *4 (C.D. Cal. Jan. 20, 2012)).)

According to the Choi Defendants, Cricket contracted with Actscom Korea to create the source code, which in turn subcontracted the job to Appeal System for the A100, A200, and A210 phones and to BNSoft for A300 and A310 phones. (Id. (citing id. Attach. #1 Decl. Choi at 2; id. Attach. #5 Decl. Park at 2).) They state that Choi, Park, and Actscom USA, Inc. were not involved in the creation of the source code. (Id. (citing id. Attach. #1 Decl. Choi at 2-3; id. Attach. #5 Decl. Park at 2-3).) While Appeal System and BNSoft may have possessed multiple versions of the source code, only binary code and the final versions of the code were sent to Actscom Korea. (Id. at 11-12 (citing id. Attach. #1 Decl. Choi at 3; id. Attach. #5 Decl. Park at 3).)

18

The Choi Defendants also contend that M Seven's expert erred when he opined that Defendants did not produce a final version of the source code. (Id. at 13.)  As to the A210 code, Defendants state that the version they produced "is actually more current than the version of code used in the phone analyzed by Stillerman." (Id.)  They explain that the source code produced for the A210 phone -- version A210_CK_D1.35 -- was the last maintenance release. (Id. (citing id. Attach.  "Here, Stillerman's mistake was in apparently not seeing that the correct version number (D1.35) was indicated in the row immediately below the version number he relied on (C1.20)."  (Id. (citing id. Attach. #5 Decl. Park at 5).)

For the A300 and A310 phones, Defendants assert that the code provided is the "exact same version" found in the phone examined by Stillerman.  (Id. (citing id. Attach. #5 Decl. Park at 4).)  The Choi Defendants insist, "It appears that Stillerman's mistake was in looking at the version number of the non-proprietary 'AMSS' code (AMSS stands for Advanced Mobile Subscriber Software, and is a Qualcomm product), rather than the version number of the complete source code that was built on top of the AMSS code."  (Id. (citing id. Attach. #5 Decl. Park Exs. 2-5).)  For these reasons, the Choi Defendants maintain that the Motion for Contempt should be denied.

In the Reply, Plaintiff repeats that Judge Major ordered production of all versions of the source code because the document requests asked for "all prior and current versions of the code". (Reply 5-6, ECF No. 131 (citing Mot. Compel Attach. #4 Ex. G at 85, ECF No. 59; id. Ex. H at 112; id. Ex. I at 11).)  M Seven insists that Judge Major "essentially mirror[ed] M7's requested relief to compel its discovery request."  (Id. at 6.)  According to

1  Plaintiff, the ruling is not vague or ambiguous because "a
2  defendant cannot create ambiguity or manipulate the meaning of an
3  order to compel by divorcing it from the discovery request that
4  gave rise to it." (Id. at 6-7 (citing Keithley v. Homestore.com
5  Inc., 629 F. Supp. 2d 972, 975-76 (N.D. Cal. 2008)).)

6      M Seven urges that the Choi Defendants had possession of
7  multiple "final" versions of the source code, which they failed to
8  produce. (Id. at 9-10 (citing id. Attach. #1 Decl. Van Loon at 2;
9  Opp'n 13-14, ECF No. 125; id. Attach. #5 Decl. Park at 5).)
10 Plaintiff rebuts Defendants' argument that they only had possession
11 of binary code because "the Choi Defendants would not have been
12 able to view or edit binary code, as their emails indicate they are
13 doing." (Id.) Finally, M Seven asserts that to the extent Appeal
14 System and BNSoft deleted the A300 and A310 source code, Choi and
15 Park "had a duty to preserve" the deleted code because they
16 controlled those companies. (Id. at 13.)

17     First, the Court must consider whether there is a specific and
18 definite order requiring the production of all versions of the code
19 for each cell phone model. See United States v. Bright, 596 F.3d
20 at 694; Reno Air Racing Ass'n v. McCord, 452 F.3d at 1130. Judge
21 Major's holding was that "Defendants must produce the source code
22 for phones A200, A210, A300, and A310." (See Order Granting Part
23 Pl.'s Mot. Compel 8, ECF No. 71.) This language does not
24 explicitly refer to historical and final versions of the code for
25 each of the subject phones.

26     M Seven's assertion that the order "specifically applies to
27 all the 'various versions of the source code'" is inaccurate. (See
28 Mot. Contempt Attach. #1 Mem. P. & A. 13, ECF No. 110 (citing Order

1    Granting Part Pl.'s Mot. Compel 3, ECF No. 71).)  The quoted

2    material upon which Plaintiff relies is taken from the procedural

3    background for the order.  In context, Judge Major wrote, "On

4    February 3, 2014, counsel for all parties jointly contacted the

5    Court regarding a discovery dispute brought by Plaintiff concerning

6    Defendants and their objections to Plaintiff's discovery requests

7    for various versions of source code." (Order Granting Part Pl.'s

8    Mot. Compel 1, 3, ECF No. 71.)[5]  The reference to "various

9    versions" of code appears to allude to different codes for

10   different phones.

11        Other portions of Judge Major's order, at a minimum, undermine

12   M Seven's argument that all versions of source code were to be

13   produced.  In the February 24, 2014 Opposition to M Seven's Motion

14   to Compel, Defendants represented that the only source code in

15   their possession was "a single copy of the A100 source code."

16   (Opp'n Mot. Compel 8, ECF No. 66; see id. at 5, 9, 11-12, 15.)

17   Judge Major found the production of that code sufficient.  (See

18   Order Granting Part Pl.'s Mot. Compel 5, ECF No. 71 ("Defendants

19   assert, and Plaintiff does not dispute, that Defendants possess and

20   have made available to Plaintiff the source code for phone A100.");

21   id. at 8 ("Because Defendants produced the source code for phone

22   A100 prior to the filing of the motion to compel, the Court is

23   granting in part and denying part Plaintiff's motion.").)

24   _____

25        [5]  The Court notes that this is not the first time M Seven's
     counsel has made inaccurate representations to the Court.  (See
26   Order Granting Part Dispositive Mot. 7, ECF No. 137 ("In an attempt
     to distinguish . . . this case from the Choi Korean Action,
27   plaintiff inaccurately contends . . . .  Plaintiff also
     inaccurately contends . . . .").)  Counsel is presumably familiar
28   with an attorney's duties to the Court, particularly the duty of
     candor as set out by California Rule of Professional Conduct 5-200
     and the California Business and Professions Code.

Accordingly, Defendants reasonably interpreted the discovery order and produced a single version of the A210, A300, and A310 code. Even if Defendants interpreted the discovery order too narrowly, M Seven cannot complain because the Defendants produced source code in their possession, custody, and control.  (See Opp'n 9, ECF No. 125 ("Defendants produced every version [of source code] they had, and would have produced older versions if they were available.").)

Relying on Keithley, 629 F. Supp. 2d at 975-76, Plaintiff insists that "a defendant cannot create ambiguity or manipulate the meaning of an order to compel by divorcing it from the discovery request that gave rise to it."  (Reply 5-6, ECF No. 131.)  In that case, the court granted a motion to compel and ordered "'production of website documents responsive to requests that do not call for source code'; included among the requests that do not call for source code was request six . . . ."  Keithley, 629 F. Supp. 2d at 976.  "[D]efendants' contention that request six was so vague and ambiguous . . . does not explain why defendants did not believe that request six, which explicitly lists 'reports,' did not cover reports."  Id.  The reviewing court determined that the responding party had been directed to provide all documents responsive to discovery requests that did not call for source code, regardless of whether the court discussed each, specific type of document at the hearing.  Id. at 975-76.  Here, Judge Major did not order compliance with specific document requests or order production of prior versions of source code.  (See Order Granting Part Pl.'s Mot. Compel 8, ECF No. 71 ("Defendants must produce the source code for phones A200, A210, A300, and A310.").)  Keithley is not this case.

Because multiple versions of the code existed for each phone, the Court must next determine which version of the source code the Defendants needed to produce in order to substantially comply with Judge Major's order.  See Bright, 596 F.3d at 694.  Neither the Opposition to Plaintiff's Motion to Compel nor the discovery order make any reference to whether the A100 code that was produced was a pre-release version or a version of source code contained in a commercially released phone.  (See generally Opp'n Mot. Compel 5-21, ECF No. 66; Order Granting Part Pl.'s Mot. Compel 1-9, ECF No. 71.)  The Court construes Judge Major's order as requiring the production of source code contained in a commercially released phone.  Thus, to the extent Defendants produced code used in a commercially released phone, they have substantially complied with the order.  See Bright, 596 F.3d at 694.

In the Motion for Contempt, Plaintiff initially argued that the A200, A300, and A310 code provided by the Choi Defendants was a pre-release version of the code.  (Mot. Contempt Attach. #1 Mem. P. & A. 17, ECF No. 110.)  In the Opposition, Defendants explain under oath, however, that (1) M Seven's expert misread the code and (2) the source code provided for the A210, A300, and A310 phones was contained in commercially released phones.  (Opp'n 12-14, ECF No. 125; id. Attach. #5 Decl. Park at 4-5.)  Plaintiff does not address the issue in the Reply.  (See Reply 5-10, ECF No. 131.)  M Seven has failed to prove by clear and convincing evidence its claim that Plaintiff was provided early versions of source code not found in the commercially released phones.  See In re Dual-Deck Cassette Recorder Antitrust Litig., 10 F.3d at 695.

1    In sum, the discovery order does not preclude more than one

2  reasonable interpretation of its scope, a factor that weighs

3  against finding the Defendants in contempt.  See Reno Air Racing

4  Ass'n, 452 F.3d at 1132 ("'The judicial contempt power is a potent

5  weapon.  When it is founded upon a decree too vague to be

6  understood, it can be a deadly one.'") (quoting Int'l

7  Longshoremen's Ass'n. v. Phila. Marine Trade Ass'n, 389 U.S. 64, 76

8  (1967)); Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc., 689

9  F.2d at 889 ("Where the language of a consent judgment is too

10  vague, it cannot be enforced; to do so would be an invalid exercise

11  of judicial authority.") (citations omitted).  The Defendants

12  produced the source code for the A210, A300, and A310 phones.  They

13  reasonably interpreted and substantially complied with Judge

14  Major's order.  Plaintiff did not seek clarification or

15  reconsideration of the discovery order.  Instead, M Seven filed a

16  Motion to Hold Defendants Chris Young Choi, Yongsik "Stanley" Park,

17  and Actscom USA, Inc. in Contempt [ECF No. 110].  For all these

18  reasons, the Motion for Contempt [ECF No. 110] as to A210, A300,

19  and A310 phones is **DENIED**.

20  **G.    The A200 Source Code**

21    In her order, Judge Major states, "If Defendants are unable to

22  obtain the source code for any of the phones, each Defendant must

23  provide a declaration stating whether the code for each phone was

24  ever in Defendant's possession, custody, or control and, if it was,

25  what happened to the code."  (Order Granting Part Pl.'s Mot. Compel

26  8, ECF No. 71.)  The A200 code was not produced, so the Choi

27  Defendants submitted declarations explaining why they were unable

28  to obtain and produce a copy of the source code.  (See Mot.

Contempt Attach. #1 Mem. P. & A. 14, ECF No. 110; Opp'n 15, ECF No. 125.)  Plaintiff urges that Defendants' declarations are deficient because they do not account for every version of the A200 code. (Mot. Contempt Attach. #1 Mem. P. & A. 9-10, 15, ECF No. 110.) Moreover, they do not contain all the information required. (Id. at 9-11, 15-17.)

M Seven insists that the Choi Defendants fail to explain why Jeong and others copied the computer files, as well as where they found the files. (Id. at 10, 16.) "Additionally, Choi and Park's descriptions of the measures undertaken to secure the source code from third parties offer no explanation as to why it is that the source code has gone missing." (Id. at 10.)  Plaintiff argues that this lack of explanation suggests that the code may have been destroyed. (Id. at 16.)

According to M Seven, the Defendants only sent a letter and an e-mail to obtain the code; these efforts are insufficient to comply with the discovery order. (Id. at 10-11, 16-17.)  Further, "[a]lthough BNSoft did actually respond that they did not find the code, Choi and Park declined to ask what types of searches were conducted, or where BNSoft actually looked." (Id. at 16.) Plaintiff also asserts that it is implausible that Defendants never possessed the final version of the code. (Id. at 15.) For these reasons, Plaintiff maintains that the Defendants should be found in contempt.

In the Opposition, the Choi Defendants contend that their declarations are adequate because "they confirmed they never had a copy of the A200 source code in their possession, custody, or control." (Opp'n 15, ECF No. 125 (citing Decl. Choi 3, ECF No.

103; Decl. Park 3, ECF No. 104).)  "Second, they explained what efforts were made to locate the A200 source code, and the results of those efforts." (Id.)  Defendants argue that they provided more information than was required because they explained why the source code may not have been kept and detailed how the A210 source code was almost identical to the A200 code.  (Id.)  Finally, Choi and Park state that they had minimal contacts with Actscom Korea during the relevant time period.  (Id. at 16-17.)

In the Reply, M Seven asserts that the Choi Defendants contradict themselves because they state that they never had a copy of the A200 source code, yet they also explain that a copy of the code was likely sent to Actscom Korea, an entity within Park and Choi's control.  (Reply 10, ECF No. 131.)  Defendants fail to explain, Plaintiff alleges, "'what happened to the code', sufficient to be able to determine if spoliation has occurred." (Id.)  M Seven also contests Choi's attempts to distance himself from Actscom Korea.  (Id. at 11-12.)  According to Plaintiff, the "established facts" show that Choi was active in managing Actscom Korea from 2007 to 2010.  (Id.)

Judge Major acknowledged that there was some evidence that, at one time, the Choi Defendants may have had possession of the A200 source code.  (See Order Granting Part Pl.'s Mot. Compel 5-7, ECF No. 71.)  She gave the Defendants the opportunity, however, to state under oath that they presently are "unable to obtain the source code." (Id. at 8.)  Defendants Choi and Park both stated, "I have never had a copy of the A200 source code in my possession, custody or control, and Actscom USA also has never had a copy of

12cv01424 CAB(RBB)

the A200 source code in its possession, custody or control."

(Decl. Choi 3, ECF No. 103; Decl. Park 3, ECF No. 104.)

These statements are consistent with Judge Major's conclusion that "the evidence presented to the Court does not establish that any of the Defendants had actual possession of the requested source code and failed to produce it." (Order Granting Part Pl.'s Mot. Compel 9, ECF No. 71.) The Court cannot find clear and convincing evidence that the Choi Defendants had possession of the A200 source code and failed to produce it. See 7 James Wm. Moore et al., Moore's Federal Practice § 37.51[7][b], at 37-109 ("Any doubts as to whether these requirements have been met in a particular case must be resolved in favor of the party accused of the civil contempt.") (footnote omitted).

In their declarations, both Choi and Park adequately explained that the A200 source code was never in their custody, possession, or control. (See Decl. Choi 3, ECF No. 103; Decl. Park 3, ECF No. 104.) Further, they sufficiently described their attempts to obtain the code. (See Decl. Choi 4-5, ECF No. 103; Decl. Park 3-5, ECF No. 104.) Plaintiff additionally seeks a finding of contempt because Defendants did not explain why the source code files were copied, where the original files were found, why the source code went missing, and how BNSoft conducted its search. (Mot. Contempt Attach. #1 Mem. P. & A. 10, 16, ECF No. 110.) Yet, none of this information was required by the discovery order. (See Order Granting Part Pl.'s Mot. Compel 8, ECF No. 71.)

Judge Major also held that the Choi Defendants needed to "make a reasonable effort to obtain the source code." (Id.) M Seven criticizes Defendants' attempts to obtain the A200 code and

27

concludes that the efforts made were not reasonable.  (Mot.

Contempt Attach. #1 Mem. P. & A. 10-11, 16-17, ECF No. 110; Reply

13, ECF No. 131.)  Plaintiff overstates its case and provides no

support for its conclusion.  Defendants contacted Actscom Korea and

Appeal System, the entities most likely to have the code, by both

e-mail and letter.  (Decl. Choi 3-4, ECF No. 103; Decl. Park 3-4,

ECF No. 104.)  Plaintiff expects more, but more was not required.

M Seven has failed to prove by clear and convincing evidence

that the Choi Defendants' efforts were unreasonable.  See L.H. v.

Schwarzenegger, No. S-06-2042 LKK GGH, 2007 WL 2781132, *2 (E.D.

Cal. Sep. 21, 2007) (citing United States ex rel Englund v. L.A.

Cnty., 235 F.R.D. 675 (E.D. Cal. 2006)) (explaining that the

reasonableness of efforts to obtain information responsive to

discovery requests is "determined by the size and complexity of the

case and the resources that a responding party has available").  As

to the A200 source code, Defendants' declarations are sufficient,

and Plaintiff's motion [ECF No. 110] is **DENIED**.

Because the Court has determined that Defendants should not be

found in contempt, it need not address "Defendant Cricket

Communications, Inc.'s Opposition to M7's Motion for Contempt and

Sanctions [ECF No. 127]" and "M Seven System Limited's Reply to

Defendant Cricket Communications, Inc.'s Opposition to Motion for

Contempt and Sanctions [ECF No. 135]," both of which address

whether the Court should impose specific types of sanctions.

### IV.  CONCLUSION

The motion for an order to show cause why the Choi Defendants

shall not be held in contempt [ECF No. 110] is **DENIED**.  The Joint

Motion to Seal Exhibits [ECF No. 111] is **GRANTED**.  The Clerk of

1  Court is ordered to **STRIKE** "Evidentiary Objections to Chris Choi's

2  Declaration in Support of Opposition [ECF No. 132]," "Evidentiary

3  Objections to Yongsik 'Stanley' Park's Declaration in Support of

4  Opposition [ECF No. 133]," "Objections to Evidence Submitted with

5  M7's Reply in Support of Motion to Hold Defendants in Contempt for

6  Failure to Comply with Judge Major's March 17, 2014 Order [ECF No.

7  144]," "Response to M7's Evidentiary Objections to Declaration of

8  Yongsik 'Stanley' Park [ECF No. 147]," "Response to M7's

9  Evidentiary Objections to Declarations of Chris Choi [ECF No. 148]"

10  and "Response to Objections to Evidence Submitted with M7's Reply

11  [ECF No. 152]" from the docket.

12

13  DATE: August 11, 2014

14                                         Ruben B. Brooks
                                          United States Magistrate Judge
15
    cc:
16  Judge Bencivengo
    All parties of record
17

18

19

20

21

22

23

24

25

26

27

28